# Taxpayers' League of Bell County v. Sun Publishing Company.

(Decided Oct. 26, 1934.)

MARTIN T. KELLY for appellant.

LOW & BRYANT, N. R. PATTERSON and W. L. HAMMOND for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

The appellant, domiciled in Pineville, Ky., filed its petition in the Bell circuit court, alleging that it is a voluntary, incorporated organization having no capital stock, not engaging in business for profit, and with power to sue and be sued. Briefly stated, its objectives were: To curb unlawful and injudicious expenditures of public funds and to take such legal steps as in its judgment appeared necessary to protect the monies raised by taxation for public purposes; to audit or have audited public records of Bell county, and to publish reports of the same; to employ such agencies, including the engagement of legal talent, as might be necessary to promote the end sought; and generally to do all things leading to the ultimate purposes of its organization, such as would tend to elevate the government to a higher plane.

The appellee is also a corporation engaged in the publication of The Pineville Sun, a weekly newspaper, having an extensive circulation throughout Bell county and the state of Kentucky.

The petition alleges, generally, that since its organization appellant has been engaged in, and confined its efforts to, the consummation of its purposes; that it had built up an extensive membership of taxpayers in its home county, who are interested in the protection of the rights of the public, endeavoring faithfully to secure to the taxpayers of Bell county governmental uplift.

Since the cause of complaint will, as the court views the case, necessitate the consideration of only one of the activities engaged in and seemingly accomplished by appellant, it will be unnecessary to recite in detail the very commendable things which it had undertaken, and to some degree accomplished. However, it is alleged that the Taxpayers' League had made, or caused to have had made, an audit of the books of the officers of Bell county, and had directed the attention to the various bodies and officers charged with the conduct of the fiscal business, and of the schools of the county, to certain shortcomings, pointing out to those bodies and officers a lack of diligence, a waste of funds, and failure to comply with and abide by the laws enacted for the guiding control of public officers. It had mailed, and caused to

be mailed, to the various officers a letter of some length, calling attention of the members of the fiscal court, other county officers, and the boards of education, to specific acts of commission and omission, and particularly to failure to observe and follow the law. The communications referred to condemned the practices that had theretofore been indulged in, and called upon various officers for appropriate action looking toward a curing of the evils.

The article hereinafter set out could have had direct relation, as indicated, to but one of the activities of the appellant; hence we shall give it somewhat in detail. After numerous suits had been brought by the League for and on behalf of citizens of Bell county, all of which seem to be such as are well within the declared purposes of the League, and at a time when creditors of the county were presenting their claims, the county attorney of Bell county prepared and presented to the League for its approval an order authorizing the fiscal court to borrow $34,000, from a bank in Pineville; the avowed purpose of said borrowing being to furnish funds to pay county expenses which had accrued in 1932, coupled with an intention to pledge revenues collected in 1933, for the liquidation of the loan. The League, taking the position that taxes collected in one year could not be legally expended for the purpose of paying debts of prior years, called attention of the fiscal court, and the bank which. was proposing to make the loan, to its conclusion as to the illegality of the proposed action, by means of a letter addressed to the court about May 20, 1933, and likewise directed the court's attention to the provisions of section 4281-u1 et seq., Kentucky Statutes, and notified the court that it (the appellant) could not give its consent to the expenditure of funds in the manner proposed, saying to the court that if the negotiation should be carried out the court should use the funds borrowed in payment of legal debts contracted for the year 1933.

The petition then alleges that appellee knowing full well the plans and purposes of appellant, in its paper issue of June 1, 1933, "falsely, wickedly and maliciously" published of and concerning the plaintiff a certain, false, scandalous, and malicious libel, defamatory and libelous of the plaintiff and its purposes. The article referred to is as follows:

"The Taxpayers' League has blocked plans of

Bell County to pay its debts at this time and unless some compromise is worked out a special tax levy will have to be made to take care of indebtedness.

"Various merchants and individuals have credited Bell County in good faith. In the past it has been customary to borrow funds to pay off these debts, pledging the revenue of the next fiscal year to take care of the payments. The claims are not entered until the funds are available, the fiscal court contends, so the payments do not constitute a clearing of a previous year's indebtedness. This system has been followed for years and no objection has been voiced to it.

"Merchants who credited the county in good faith and carried their claims longer than they otherwise would have done, now are faced with the possibility of another year's delay in payment of their claims. The Taxpayers' League undoubtedly has done some constructive things. There is no doubt that many of the alleged irregularities in the county should be curbed by some such organization. But when organization become obstructionists they have outlived their usefulness."

The appellant alleges it had not "blocked" the plans of Bell county to pay its indebtedness, and that plaintiff is not an "obstructionist" and has not outlived its usefulness, and insists that the publication was intended for the purpose of defaming and libeling appellant and bringing it into disgrace and disrepute; of destroying public confidence in the appellant and thwarting its general purposes.. It is also alleged that the plaintiff notified the defendant that the publication was false, and demanded a retraction in the manner provided by law, but that defendant failed to accede to its request, and, claiming that it had been damaged by the dissemination of the published article, seeks judgment in the sum of $5,000.

An amended petition and a second amended petition appear to have been filed for the purpose of setting up special damages. The two amended pleadings, taken together, allege that appellant relied solely on the taxpayers of Bell county for its membership, receiving annual dues of $1 per member, and that its total income

was to be used for its expenses; that theretofore its membership had totaled about 300; and it further alleged that it had been effective in its objectives for the betterment of its members and other taxpayers of Bell county in having expenses reduced and recovering for the county, through its efforts, large sums of money which otherwise would be lost to the taxpayers. It claims that since the publication, above recited, the membership has decreased and many of its former members and supporters were led to believe by the publication that the plaintiff was obstructing the payment of legal debts, and that publication of the article caused many of its members to refuse to renew their subscriptions. The later amendment undertakes to lend more force to the allegations of the original petition, by pleading that the article was published with the purpose of having the effect to induce the readers of the paper to have an ill opinion of the plaintiff and its efforts, and was made without lawful justification or excuse, with malice and for the purpose of bringing it into contempt among its members and the public, and to expose plaintiff to the hatred of its members and taxpayers of Bell county, and that at the time of its publication the publishers knew it to be false. In both amended petitions relief is sought as in the original petition. The court sustained a demurrer to the petition as amended, and upon plaintiffs declining to plead further, the action was dismissed over objection of appellant, with exception and an appeal.

From a careful survey of the petition and the amendments thereto, it seems apparent that there is a lack of sufficient allegations to justify a claim for special damages; it being clear that appellant is a nonprofit institution, neither buying nor selling, and devoting its income only to the furtherance of the purposes set out in its charter. The allegations with relation to a purported injury to its business do not convey to the mind of the court the belief that its membership has been decreased to such an extent that it will be unable, at the present time or in the future, to properly function or is or will be hampered in carrying out the purposes of its organization. Indeed, reading the pleadings, it appears that at least for the present appellant "has been effectual in its objectives for the betterment of its members and other taxpayers of Bell County in having expenses reduced in Bell County and recovering through its ef-

forts large sums of money," and from a further reading of the pleadings, together with appellant's brief, it seems also to have been effectual in preventing the loan for the purpose of paying off, what the League conceived to be, illegal debts. However, since the case may be decided on a different and all-sufficient ground, it is not necessary to enlarge on this feature of the case. Going back to the article complained of, it is difficult for the court to reach a conclusion that the article is subject to the construction, or of the meaning or possible effect attributed to it by the appellant. It is apparent that the phrases which in briefs are referred to as being objectionable, appear in the first and last paragraphs of the article, wherein it is said the League had "blocked plans of Bell County to pay its indebtedness at this time" and "that there is no doubt that many of the alleged irregularities of the county should be curbed by some such organization. But when organization become obstructionist they have outlived their usefulness." It seems clear that the situation which existed between the local public officers and the appellant was due to a difference in the construction placed on the character of the indebtedness by the respective parties, and a different belief as to the meanings of the statutes and numerous cases written by this court on that question. The appellant was taking the position that because the indebtedness had been created in prior years, in its opinion, funds could not be borrowed and used to pay 1932 indebtedness, and that loan secured and paid by a pledge and use of the public funds collected for debt purposes in the year 1933. The fiscal court, as evidenced by its proposed order and alleged plan, sustained a different view.

It was fairly stated in the article that the officials took the position that the claims were not "entered" until the court was in a position to pay same, and according to their construction the debts then became "current," hence no illegality in paying with current funds. No reference need be made to such portions of the article as are commendatory, as some portions appear to be, but as to so much thereof as is complained of as being libelous it may first be said that the author of the article might have used a word other than "blocked." The word "thwarted," "impeded," "hindered," or "delayed" could have been used in the sense "blocked" was used, with identical meaning. In fact,

appellant says that its objection to the plan prevailed. It is stated in the petition that the "plan" was presented to appellant for approval, and that appellant refused to approve. In brief, appellant's view of what happened to the "plan" is thus stated:

> "The fiscal court then asked the appellant to approve the loan, which of course appellant could not agree to, and did not do. The result was the loan *fell through,* but the county did borrow $23,000 from the bank and limited the payment of debts to those incurred in 1933."

Whether the plan fell through, was thwarted, hindered, delayed, or blocked is but a choice of words of similar import, and it cannot be conceived that the use of the unqualified word "blocked" with reference to the plans of the court to pay debts "at this time" is at all reprehensible.

The same thing is true of the word "obstructionist," and the manner of its use in the latter part of the article. An obstructionist is one who hinders, thwarts, impedes, or delays. However, giving the article the broadest latitude, it does not seem to be susceptible of carrying the evil meaning or purpose attributed to it by appellant.

Our pronouncements in Sweeney & Co. v. Brown, 249 Ky. 116, 60 S. W. (2d) 381, are applicable and control here. Paraphrasing to some extent the conclusion expressed in the Sweeney case, it may well be said that the article attacked imputes nothing derogatory to the League's reputation. It is in no sense reflective upon, or affects its standing, honesty of purpose or honor in business, nor does it impugn it as a corporation, engaged as it appears to be in a well-aimed purpose. It may be suggested that as to members of the League who are and were acting in good faith, as we must assume they are and were acting, and as to all good citizens who believe in treading the path of the law, they should accept the published article as praiseworthy rather than as insiduous or defamatory. This view is taken because from its own allegations and statements it seems clear that the League has accomplished much, in shall we say, blocking and obstructing practices which it, and perhaps many others, honestly believed to have been unwarranted by law.

After a careful review of the record and applicable decisions of this and other courts, it must be concluded that there has been no cause stated, and consequently the demurrer to the petition as amended was properly sustained.

Judgment affirmed.